IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES PAGE,

    Plaintiff,

v.                                                              No.CIV 96-1621 MV/WWD

LT.SPARKS, Corrections Lieutenant (CNMCF),
C.O. LOPEZ, Corrections Officer, (CNMCF),

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court *sua sponte* and upon Defendants' Motion for Summary Judgment which was filed March 2, 1998 [20-2]. The motion was filed as an alternative pleading to Defendants' *Martinez Report* which was submitted pursuant to a Court Order entered February 2, 1998. Plaintiff is incarcerated and is proceeding *pro se* and *in forma pauperis*. Plaintiff alleges that Defendants, who are correctional officers at the Central New Mexico Correctional Facility ("CNMCF") acted with deliberate indifference and violated his Eighth Amendment rights by placing him in the same housing unit as an inmate who had assaulted him previously, even though they knew that the inmate had made direct threats to Plaintiff's safety and well-being.

    2.  Plaintiff has been given time to respond to the *Martinez Report*, although he has not done so; and he has been given notice that the information submitted in the report may be used in deciding whether to grant summary judgment in Plaintiff's claims.

*Legal Standards*

3. Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. As the non-moving party, the Plaintiff must present enough evidence to allow a reasonable jury to find for the non-moving party, and cannot rest upon mere allegations or denials of the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir. 1996).

4. As a prisoner, Plaintiff has a right to be reasonably protected from constant threats of violence from other inmates. Riddle et al v. Trevino et al, 83 F.3d 1197, 1204 (10th Cir. 1996). However, in order to succeed on a claim under the Cruel and Unusual Punishments Clause of the Eighth Amendment, Page must not only show that he is incarcerated under conditions posing a substantial risk of serious harm, but that Defendants acted with a "sufficiently culpable state of mind," which in prison-conditions cases is one of "deliberate indifference" to inmate health or safety. Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

5. Administrative segregation at CNMCF is used to prevent an inmate from doing harm to other inmates where his presence is a threat to the safety of the general population, or to protect an inmate who may be in danger of bodily harm from other inmates. Ex. A. Placement in administrative segregation can be either by request of the inmate ("voluntary") or by staff decision ("involuntary"). Administrative segregation is not used for the purpose of punishment; however, CNMCF policy notes that it "has no application" to inmates confined in "pre-hearing detention" which *is* used for disciplinary purposes. Id.

*First Incident*

6. The following chronology of facts unfold from the materials and documents submitted

with the *Martinez Report:* Plaintiff was first assaulted by an inmate, Jeffrey Dunnells ("Dunnells")[1] in January 1995 in the prison cafeteria when Dunnells threw a salt shaker across the room in Plaintiff's direction, striking his forehead. The assault resulted in Plaintiff needing sutures for a one-inch laceration on the right side of his forehead. Exs. A, D. Dunnells told the shift supervisor, Capt. Pino, that he did not mean to hurt Page, but "only wanted to disrespect him." Ex. B at 7.[2] An investigation of the incident revealed that Plaintiff had received threats from at least three other inmates which were reported by Defendant Lopez to Defendant Sparks, who signed the investigation report. Ex. A, at 3. Both Page and Dunnells were initially placed in pre-hearing detention and Dunnells received a misconduct report. Ex. B at 5.

7. According to the incident report, Page was asked "several times" whether he wanted to be placed in protective custody, but he "advised no each time." Id. at 3. Pending further investigation of the incident, officials decided that Plaintiff would be more appropriately housed in administrative segregation "for his own safety." Ex. A at 4. After two weeks in administrative segregation, Plaintiff was released into general population after informing the Administrative Segregation Committee that he would not be in danger if he were returned there. Ex. B. at 29.

*Second Incident*

8. Page remained in general population until March 8, 1995, when he was involved in an altercation with Dunnells at Dunnells' cell in the housing unit. An incident report indicates that Dunnells admitted punching Page in the face "for asking 'how did it feel receiving a b--- job'"?

---

[1] Documents provided by Defendants indicate that Dunnells is the unnamed assailant in Plaintiff's pleadings.

[2] Exhibit pages are unnumbered.

3

Dunnells said that he got up off the toilet and "punched [Page] in his face," and a fight ensued between the two. Ex. B at 13  Four inmates who were in the unit, or "pod" at the time said they saw Plaintiff standing at Dunnells' door. They said that Dunnells told Page to move away from his cell.

9.  When Page did not move, Dunnells got up and punched Page in the face. The inmates also said that Page "was always looking at them when they were taking showers and also using the toilet and it was just a matter of time before something like this was going to happen." Id.at 14. Both Page and Dunnells required medical attention, and Page received stitches for a 2½ inch laceration above his left eyebrow. Ex. B, Med'l Incident Rep't. This time, both inmates were placed in administrative segregation as a pre-hearing detention, and both received misconduct reports. Ex. B. at 19, 20.

10.  Page refused to acknowledge any of the facts which were in the report concerning the incident. Ex. B. at 24. Following a disciplinary hearing on his role in the fight, Page was found to be "guilty of a minor report" violating CNMCF policy and was sanctioned with a reprimand and warning. Ex. B at 26, 34. Dunnells received a Major Level Report, and received a sanction of 10 days segregation time. Id. at 31.[3]

11.  On March 23, 1995, Page requested to be placed in protective custody "due to pressure being received on the compound," asking to be transferred to another facility. Ex. B at 27, 36. Based on Plaintiff's request and also because officials believed that placement back into

---

[3] Documents attached to the *Martinez Report* do not specify when Page was released back into the general population after the second incident. Plaintiff states in his Complaint that he was released when Dunnells was transferred to another unit. Compl., ¶ 14. At any rate, he does not allege further threat of injury until he applied for protective custody on March 23, 1995.

4

the general population would pose threats of "substantial bodily harm," Page remained in administrative segregation until he could be transferred to the Western Facility in Grants. Id. at 30. Page does not allege any injury occurring within the period of time following the second fight on March 8th until the time he was transferred.

*Absence of Deliberate Intent*

12. Plaintiff was convicted of a sex crime, Ex. E, which, as Defendants suggest, often makes them targets of other inmates. In the circumstances forming the basis for Plaintiff's allegations here, Dunnells happens to be the other inmate involved, but apparently there is a history of similar incidents involving threats from other inmates over the time Plaintiff has been incarcerated and which required Plaintiff to be separated from the general population. In fact, Plaintiff did not specifically identify Dunnells as a threat until February 1998, when his Classification Officer added Dunnells as an "enemy" on Plaintiff's Enemy Alert Card. Ex. C at 1; Ex. E.

13. Given the history of past threats and the nature of Plaintiff's conviction, I find that Page has met the first requirement of an Eighth Amendment claim for failure to protect, in that he is incarcerated under conditions posing a substantial risk of serious harm. Riddle et al v. Trevino et al, 83 F.3d 1197, 1204 (10th Cir. 1996)(citing Farmer, 511 U.S. at 834). But he has not presented any facts which raise an issue concerning a sufficiently culpable state of mind on the part of Defendants, without which Plaintiff cannot sustain his claim.

14. In this case, prison officials not only responded reasonably to threats made against Plaintiff, but showed an awareness of his particular situation and took the necessary precautions to ensure his safety. Since 1993, Plaintiff has been transferred numerous times in efforts to

protect him from other inmates.[4]  Lt. Lopez and Officer Sparks, the only remaining Defendants in the case, knew that Plaintiff was in possible danger of injury, but took part in the decision to place Page in administrative segregation immediately after the salt shaker incident.  Plaintiff was released into general population only upon Plaintiff's assurances that he did not feel he was in danger at that point.

15.  After Page's release, threat of danger was always possible from Dunnells or any of the other inmates, but there are no facts which suggest that the release was made with deliberate indifference to Page's health and safety.  See Riddle at 1204 (citing Farmer at 834, and quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  When the second altercation broke out (and the evidence here indicates that the Plaintiff provoked the fight), Page was promptly placed in administrative segregation again, and was kept safe until his transfer.

16.  In sum, the materials and documents submitted with the *Martinez Report* set forth facts which fail to support any inference that Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff.  See Riddle at 1197 (prison official's state of mind is measured by a subjective, rather than an objective, standard); Farmer, 511 U.S. at 834; see Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992) (prison officials liable for "obdurate and wanton disregard [of serious harm] for the inmate's safety").  Nor has Plaintiff offered any facts which could raise a genuine issue in the mind of a reasonable juror as to the presence of deliberate intent in either of the Defendant's minds regarding Plaintiff's treatment when he was placed in or

---

[4]  Page has been housed at one time in Texas before returning to New Mexico in 1997 to the Department of Corrections' Southern facility, where he now resides in the general population. Ex. E. Johnson Aff.

released from administrative segregation.[5]

## Recommendation

I recommend that Defendants' Motion for Summary Judgment **[20]** be granted, and that Plaintiff's claim for violation of his Eighth Amendment rights be denied and that this cause be dismissed with prejudice. Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff offers different facts concerning the second incident, but none of these facts are material. See Compl., ¶ 13. According to Plaintiff, the fight occurred when Dunnells made demands of Plaintiff's "personal property with an underlying threat of violence if [he] refused to comply." Page doesn't provide dates, so it is not clear whether this coincides with the March 8th incident. However, Plaintiff states in his Complaint that he needed to get stitches above his left eye as a result of the altercation. Compl., ¶ 13.